Good morning, Your Honors. May it please the Court, Assistant Federal Defender Alina Schell on behalf of Appellant Hernandez. Mr. Hernandez in this case was charged with and ultimately convicted of eight counts of sexual exploitation of a minor under 2018 USC 2251A. The critical issue in this case, and indeed really the only issue at trial in this case, was whether the means that Mr. Hernandez used to obtain sexually explicit images from Ms. Chapman. 2251A lists multiple ways of, multiple theories of culpability. There's uses, coerces, persuades, employs, entices, etc. And in this case, the government rested its hat, although it did, as the government points out, plead in the indictment, all the alternative means of culpability. It specifically hung its hat on persuasion. Well, did it really? I mean, if it's in the indictment, your client has sufficient notice, you have notice that it could be done in any one of those ways. Apparently, at the charge conference, there was an instruction submitted. There's a lot of confusion surrounding that instruction, it sounds like. But I don't know who submitted it, but those instructions agreed upon that used the word persuade. Is that correct? That's correct, Your Honor. And respectively, if I may disagree with you, I don't think that the record is confusing about the means of culpability the government rested its hat on. The government proposed joint proposed instructions that limited the theory of culpability to persuasion. I mean, but was there discussion about that? I mean, was there – I mean, I'm trying to figure out how that happened when it was the full – It is not apparent from the record how that decision was made. Now, it does when you look at what the proposed jury instructions are. The proposed jury instruction cites to this Court's model instruction, 8.18, I think it is, I don't remember off the top of my head. But in this case, they put forth evidence. It's not just about the indictment, Your Honor, and you are correct, Your Honor, that they were well within the rights to plead in all the alternatives. But when they went to trial, there was a presumption first, starting with the proposed instructions, that were jointly agreed upon, that persuasion was the first – Well, but that had not been adopted by the Court. But, I mean, you're putting a lot on the parties had jointly agreed to these instructions. But when did the charge conference happen? Your Honor, I don't know that. And if you would give me a second to look at the record. Sure. And you'll forgive me, I'm trying to go paperless, but I'm still a bit of a Luddite in this respect. 376, Your Honor. Okay. Thank you, Mr. Flake. I'm sorry, what does 376 mean? It's Excerpt of Record 376, Your Honor. It's not March 7th, March, yeah, 3-7-0-6 or something like that. It's ER 376. I don't want to – I'm going to just say, I'm sorry, that is not the correct thing. Well, the reason I'm asking that question is because there was a discussion during apparently the closing argument where the district judge says, where are you talking about when the objection was made by the State to the defense counsel's argument on focusing on persuade, correct? Correct, Your Honor. And so then the judge is saying, where are you reading that from? So that's, in my basis, is why there might have been some confusion about where that came from. I understand that you have to rest your hat, I guess, on the fact that that was jointly agreed upon in the instructions. But I don't know if that means – I mean, that's done in different ways. Did the parties just submit them? How did that happen? No, Your Honor. It was at a conference, and did it happen before the closing? It did happen before closing. The instruction at issue in this case is at 395 in the record, and the Court instructs the jury prior to closing arguments on the elements of 2251a. And the Court specifically says, and I'm going to quote from the record, government has to prove, among other things, second, that the defendant persuaded Natasha Chapman. So where are you reading from? That is at excerpts of record 395, Your Honor. It's a big page. When I say where you're reading from, it's a page in line. Oh, I'm sorry. Let me get you the pencil. I apologize. It's 395. It's easier with a pencil. And it's page 395, and it starts at line 15. Second, the defendant persuaded Natasha Chapman to take part in sexually explicit conduct. And again, at line 16, it says the defendant persuaded. And so the judge had accepted your instructions, apparently. The judge had given the jury the jointly proposed instructions, yes, Your Honor. All right. But then there's a discussion during the – and the judge says, toss those away, toss those out, right? Yes, Your Honor. Okay. And what happened? I mean, were those the instructions that went back, or was there different instructions? Those were the instructions that went back, but the implication here – well, if I may elaborate on what happened next, Your Honor. So the government, first, I would point out at page – at page 410 of the record, also adopted the instructions and adopted the persuasion argument. And they said – and I will get to 410, and I will give you the line site. On page – excerpts of record 410, starting at line 13, the government, in their closing argument, says, second, the defendant persuaded Natasha Chapman to take part in sexually explicit conduct for the purposes of producing visual depiction of such conduct. But counsel, you know, at excerpt of record 425, after a long discussion between the parties, the judge said, throw those instructions away. What does the statute say? And then the statute – the statute was read, and the judge says, why are you arguing something – so are you arguing something contrary to the statute? And so it was fairly clear that the judge was making the determination that all of the methods of violating the statute were in play, regardless of whether or not that particular instruction focused on persuade. So why doesn't that defeat your argument? Because, Your Honor, that was error. And, you know, as I said at the beginning of my argument, 2251 lists multiple means of violating the statute. And to accept what the judge is saying, essentially what the judge would ask us to presume and wrongly presume is that each of those multiple means of violating the statute are the same exact thing. And I would submit, plain language, just looking at the plain language of the statute, employs is not the same thing as persuades. But didn't defense counsel concede that the statute controlled rather than the instruction? Your Honor, I would say that he did say, I will continue my argument. But that was only after – Well, and he did, using the – tracking the language of the statute. He did, Your Honor, but that was only – Every time, because the judge was right there on him, too. I mean, and in addition, he would use the – track the language of the statute. So I guess I'm not sure what to do with that, and I'm not quite sure what you're asking, where – what the problem is, because it became, I think, a little bit confusing, because it was surrounded also by an objection that somehow the defense was arguing consent. And I think it became clear that consent's not permissible defense to child exploitation. So please help me unravel what happened and exactly, precisely what you're saying was error. I will address the – first, what happened, and then I'll talk about what I believe the error is, Your Honor. So the – well, let's talk about the error first. Why not? So in my claim, in my briefings, we raised it as kind of a due process. It's sort of a hybrid for me between Shepard v. Reese, and it's also, I think, there's an implication of structural error in this case, which is actually something that the government raised in their answering brief. In preparing for closing argument, and indeed in preparing for trial, the defendant in this case reasonably relied on the concept that the government had narrowed the conduct that it was going to allege to persuasion. And what did – what was it that caused the defendant to reasonably rely on that? In addition to that, you said preparing for trial. So let's take preparing for trial. You said preparing for trial, making arguments, you said a number of things, but the preparing for trial is the first, earliest point in time. What is it that the government had done to mislead the defendant in preparing for trial? There would be, I think this is a little bit later, it comes very close to the beginning of the trial, is the proposed jury instructions that were jointly agreed upon. You want to change my question to something else, and you're going to answer that. But it's not going to help me. It's not going to help you. I asked you a question, and if the answer is nothing, let's stick with nothing and go on from that. So let me ask the question one more time. Okay. And again, as I said earlier to the other counsel, if you don't want to answer on behalf of your client, you don't have to answer it, and I will just go on without your answer. So you want to answer it or not? What is it that the government did in misleading defendant in preparing for trial? Your Honor, in – As the scope of their theory, that they were going only on a – on a persuasion theory and not something else at the station. Your Honor, I am not going to answer the question because I believe I misspoke. So – That's perfectly fine. I'm – if you misspoke, you misspoke. That's fine. I'm not blaming you. I just want to understand your case. So you withdrawing that or you're not going to answer, that's perfectly fine. So what, then, is the first time, the first point in time that you believe the government did something to mislead the defense? And when I say when is the first point in time, I don't just mean telling me, oh, it was at the settling of the instructions or something like that, because that doesn't tell me when it is in the context of trial. I would like to know, you know, would that be the day before trial? Would that be middle of trial? I don't know. Oftentimes, instructions are settled right at the end. So what is – that's the first point is – what is the first point that the government did something that you think misled the defense? The first point in time, I think, Your Honor, would be when they put the victim in this case, Natasha Chapman, on the stand. Now, when they put Ms. Chapman on the stand, they didn't ask her, did he pay you to do this? Did he force you to do it? Did he over – their questions really went to whether they – Mr. Hernandez had overcome any reluctance on Ms. Chapman's part. Well, what are – aren't some of the words of the statute – is one of them entice? One of them is entice, Your Honor. Okay. Is there anything that Ms. Chapman was asked that precluded them from arguing enticement as opposed to persuasion? Your Honor, enticing would seem to me – persuasion would mean there is some sort of reluctance on her part to take these pictures. And I think they got to persuasion – at least they thought they got to persuasion, and I disagree on that point, obviously, by asking her questions like, had you ever – excuse me – had you ever taken anything like – have you ever done this before? Had you ever sent any pictures before? Whose idea was this? They didn't ask you. Did he offer you some sort of dazzling incentive to do this? Did he say, if you send me these pictures – Well, she said she did it to please him. So that's an incentive. Well, in a relationship, Your Honor, people do things to please each other all the time. But you have a child who is – this is not really a relationship under the law. It's a teacher who's taking advantage of a student or a child, someone he's coaching. And I think that was part of the problem with the defense theory, is that they were trying to say consent, when there legally cannot be consent between an adult who has charge of a child and takes advantage of that. Your Honor, I respectfully disagree that consent was ever an issue in this case. The government made it an issue after, during cross-examination, the defense counsel asked Natasha Chapman questions that went to whether – to persuasion. She testified – not only did she say she did it because she thought he would like it. There was also testimony – and you'll forgive me for just a second. I see I'm running out of time. The connotation that it's a relationship embodies the idea of consent. How can you have a relationship between a teacher who's taking advantage of a student? How can that be a relationship? Legally, it's not a relationship, Your Honor. However, if he wasn't able to ask questions like that, and if he wasn't able to argue against persuasion, then he might not have even – he shouldn't have even closed. He should have just sat down and let the government do it, because essentially, if we were to adopt that theory, Your Honor, he wouldn't be able to present a defense. And I see I'm running low on time. So this was a coach of a softball player, right? And a softball player. Correct, Your Honor. She's 17. He's like 40. 43, Your Honor. And was this – was there State charges brought? The State charges were dropped in lieu of Federal prosecution. But he was charged under the statute that was at issue, NRS 201.540. Thank you, Your Honor. You know, you mentioned the victim's name. She was a minor at the time. Isn't that sealed? I'm not going to – I just want to make sure we don't put anything in – anything weir-eyed that – No, Your Honor. She's an adult now, presumably. I don't know what happens to children who become adults. Does the name get – In the – in the – both during the jury and during the – in the jury instructions, she's specifically named by her full name. So, to the best of my knowledge – and I actually – that was a concern of ours when we were doing the briefing, which is why we identified her by her initials NC. But later, as I was looking at the record, there's no indication that there was any sort of – you know, that there was a concern that Your Honor is questioning about. Thank you. Thank you. Good morning. May it please the Court. I wanted to make two corrections to my brief before I respond to what defense counsel said. First of all, on page 29, in describing the Windsor case, I wrongly described that case as somehow about Federal diversity jurisdiction. That was – that was very wrong, and I apologize. I meant to strike – About Federal what jurisdiction? I said something about Federal diversity jurisdiction. Oh. Very incorrect, and I meant to strike that from my brief, and I apologize. The other thing is a factual error. So sometimes word doesn't do what you tell it to. You think you've made the change, and it fights back. Absolutely. The second correction is, in my brief, I incorrectly stated that the victim said the defendant told her that she might go to jail. I said that on page 7 and page 20. Upon further reflection and looking at her statement, it was – it was confusing to me when I read it. I misunderstood it, but I want to be absolutely clear that the government's not taking the position that he said that. So what did he actually say to her? He's – his concern was about him going to jail. And the way that she quoted – her statement on the stand, she quoted him, and I just got confused, and I apologize. And I hope I'm not wasting the Court's time, but I just wanted to get that out there. So under the facts of this case, he was a coach but not a teacher? Correct. He was her softball coach. So was he brought – were the state charges brought under the statute that covers teachers? I think the statute applies to people – to teachers and coaches. Oh, okay. So I don't think there's a distinction. Okay. The – I wanted to – one thing that didn't come up during defendant's argument that I think is very important is – and just to lay out the sequence, we filed proposed jury instructions before trial that listed only the word persuades. During our opening statement, the government listed all of the words in the statute. During the charging conference, the – we incorrectly – we – during the charging conference and during the subsequent jury instruction, we – it was only the word persuades. Were you the trial counsel? No, I was not, Your Honor. I'm using the royal we.  I'm sorry. I do want to hear what you say. When was the charging conference? The charging conference – Just so we are clear on the sequence. I thought it was at – If you need to get something – I thought it was at ER 376. Go ahead and get what you want to get and talk off the page rather than – rather than  Thank you, Your Honor. I'd rather have a precise and correct answer than working from memory. I can never remember anything, so – and most of the stuff I do remember is wrong, so. So I'm looking at ER – When you say ER, you mean EOR? Sorry. Excerpts of record, yes. EOR. Yes. Sometimes these letters mean something. I just want to be sure we're on the same page. EOR. Yes, Your Honor. EOR. 376, you said. 376. And also – I got there faster with paper. ER – ER 314 is the – I'm sorry. You said something about C-76, and what were you going to tell me about C-76? So – to take – do it sequentially. ER 314 is about – is the minutes of the court noting when the charging construction conference occurred. 376 is when it did occur. When did it occur? How long before the trial? It occurred after the – it occurred after the government rested. So that would have been the day before closing arguments? Yes, Your Honor. So closing arguments? Yes, Your Honor. And it may have even been the day of. Let me – let me check. Was there a defense case? I apologize. Excuse me. Was there a defense case? Oh, did they put on a defense? No, I don't believe they did. So this would have been after all the evidence was in? Yes, Your Honor. So when you – when you refer us to the minutes? 314. 314. That's April 23rd. Right. But it says jury instructions. It doesn't say the charging conference. I guess that's what that means, right? When it says jury instructions, is that the charging conference? Yes, Your Honor. I believe so. So what – now that we have that, tell me what you're – I'm still not – I'm at a loss of what you're trying to communicate. What I'm trying to communicate, Your Honor, and I apologize for losing the thread, what I'm trying to communicate is sequentially we filed a proposed instruction that was incorrect because – let me take it back one more step. We filed an indictment that included all of the ways that he could violate the statute. Next, we filed a proposed jury instruction that improperly limited it to persuasion. Next, during our opening statement, we recited all of the ways that he could violate the statute. Next, during the actual jury instruction, the jury was instructed that persuade was the way to violate the statute. So, counsel, when you referred us to 314 and it talks about the April 23rd, it makes a reference to EOR 483, and 483 is the actual jury instructions rather than the charging conference. I think we were wanting to know where we can find the charging conference. The April 23rd date is where the actual jury instruction is given. Your Honor, unless I'm mistaken about the four lines down under where it says defense rests, the court recesses at 1045 for the purpose of settling jury instructions. Okay. The jury was admonished and excused. Okay. But we don't have that, the charging. That wasn't on the record. There were no minutes of that. The discussion is on the record, and that's at 376. Okay. That's what we're going to do. All right. I apologize for the confusion. But you set it all up. So what's your argument? What are you saying? My argument is the impact of all of that, going back and forth, back and forth, and then ending up with persuasion, because the defense counsel is saying that that's fair and almost structural. So what's your response? My response is that this is not a case where we had been saying, you know, murder with a hatchet all along, and then at the last minute we come along and say, well, it doesn't matter if he did the murder with a hatchet. He aided and abetted. Because that's ambush, and that's not fair. And those are the cases that the defense is relying on. What happened here is we charged it properly. We didn't surprise the defense with this, is really what I'm arguing. We were clear in the indictment. We were clear during our opening statement. We incorrectly limited it when we filed the proposed instruction. But it shouldn't have misled the defense. Why not? Well, because the — for one thing, during our opening statement, we recited all of the ways that he could violate the statute. But I guess defense counsel is saying that your questioning was based on persuasion, that your questioning was, you know, did you do this for whatever reason? I can't remember how she worded it. Was that — is that true? I mean, I think that's accurate, Your Honor, but I don't think it's accurate to say that it was based solely on persuasion. As the Court noted, those go to a lot of different ways that he could violate the statute. And to be frank with you, I'm not — What do you think? What would have been the words that you would have chosen? Certainly it wasn't employed. Right. So what's the words that you would have — I mean, it would fit into a — probably not coerce. I mean, I think a lot of that went to — I don't think he — anything he did was strong enough to support that he coerced her into doing it. But I do think it meets several of the other words in the statute. And do you think what happened didn't constitute persuasion? I think that what happened did constitute persuasion, Your Honor. I — the defense argument seems to be he didn't have to persuade her to do it because they loved each other. And I mean, I don't mean to get personal about it, but I have to persuade my significant other to do things in spite of the fact that we love — it doesn't — it's not like you can't have to persuade somebody to do something just because you have this relationship. And I think that the argument they're making goes to more like coerce, where he — you know, no, he didn't badger her into it necessarily, but he asked her to do it. It's really quite clear that he asked her for these pictures and specifically described the pictures that he wanted. So if the government was persuaded that there was sufficient evidence to meet that particular prong of the statute, why was there the big argument about focusing on the persuasion portion of the statute? In hindsight, Your Honor, as a strategic matter, it may have been cleaner to just stick with persuasion and take our chances. I mean, it certainly would have been — it wouldn't — it would have, you know, gotten rid of an appellate issue. But I think at the time, the trial — and I want to be very clear about this. This isn't in the record. The court has asked me to speculate about why it happened, and so I'm going to speculate a little bit. I think at the time, the — our trial counsel saw this, thought that the jury might get confused somehow, that his love for this girl could somehow nullify persuasion, and asked to be allowed to argue that the language of the — all of the various ways of filing the case. In hindsight, would it have been more prudent to just have the jury instruction track the statute? Definitely, Your Honor. And that was — that was a mistake. It was — it was simply a mistake. So I'm just curious. I mean, this is probably not relevant to — because you decided not to — I mean, I guess you went with these charges instead of the State charges. The defendant here was older, much, I guess, older. But, I mean, if this — if this defendant had been 18 or 19 years old, I guess he would still have been subject to Federal charges for persuading the victim here to send him pictures? Once again, this is — it's counterfactual, and there's nothing in the record about it. I don't know how we would have handled that situation. I'm guessing we wouldn't bring the case. But I — obviously, I've not — I don't know the answer, Your Honor. One — But let's — I'm sorry. No, I was going to move to a different issue. Okay. Go ahead. Hi. I was wondering if you wanted to spend a minute or two discussing the enhancement for — it was — I think it was a two-point enhancement for sending the victim her own picture. Yes, Your Honor. And he got four years for that? Your Honor, the — yes. If I could just — It seems one of the — like one of those things that maybe within the text of the language — of the guideline, but outside the scope of what the guideline is meant to deal with. I — I mean, as I understand it, the idea is you send — you know, you take a picture, bad enough, but then sort of sending it out to the Internet, where it can be passed on and on and on. That sort of enhances the harm to the victim. I don't think they ever thought about the idea of that you would send it back to the victim, where she then has control over it. There's no evidence you send it to anyone else, right? There is not, Your Honor. And to be frank, my argument is a textual one. He — that — It is? It is a textual one, based on the text of the statute. I think there's nothing to argue about the text. The text clearly covers it. And so we have one of the situations where the text clearly covers something, but the purpose doesn't seem to be served at all. And maybe the answer is the text always comes, but I'm not sure. It's a little — it's a little perplexing. It's not like a little bit of time. It's — it's more than — in itself, the enhancement accounts for more time than people get from many individual crimes. I had just a different question. I was curious why the government requested a jury instruction to inform the jury about NRS Section 201.540. I didn't even get that. Well, that was a little bit confusing, Your Honor. What happened was the defense made an argument something along the lines of the only reason that this — I'm out of time. May I please answer the Court's question? Yes. The only — the defense made an argument something along the lines of the only reason this conduct was even illegal is because he was her softball coach. I mean, is the only reason that this — sorry. Strike that. The defense made an argument that said the age of consent in Nevada is 16, and these are two people that love each other. They decided to turn this into a federal crime. And so our trial attorneys responded by saying, even under Nevada, this would have been a problem, but by doing that, they didn't mean to somehow adopt and graft Nevada law onto federal law. They just made it to Rabat A, what would have otherwise been a potentially confusing argument. Thank you. Do you have any further to my question? It's just the text, right? Do you have any further thoughts on my question about enhancement? Oh, Your Honor, it's — I mean, it's a textual argument that I'm making. I think the decision whether to apply that enhancement is vouchsafe to the district court's discretion, as are all of these sentencing matters. They didn't object to it in the district court, and so I don't think they can show plain error under review. Okay. Thank you. I don't remember that you had any time left. But if you didn't, would you like to take a minute? I have none. I used up all my time, Your Honor. But if you'd like, would you permit me a minute to rebuttal? That's what I asked. Would you like a minute? Yes. I'm sorry. I have no time. I understand. You may have a minute, if you'd like to take it. Thank you, Your Honor. Very briefly, to respond to one of the arguments that the government made. The government said during its argument just now that the evidence was sufficient to prove that the means of violation here could be not just persuasion, but also perhaps induce, entice, use. And I would just note, and I touched on this briefly, that this is really what the government is advocating is a reading of the statute that would render those words meaningless. Congress clearly chose all of those different means of violation with the intent that these mean very different things. And I just would say that if enticement does not mean the same thing as persuasion, and we can deduce that because Congress saw fit to list out the different means of violation. And unless there are any other questions, I will submit, Your Honor. Thank you. The case is highly substantive. We are adjourned.
judges: Kozinski, Rawlinson, Murguia